## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CHARLES HOUGHTON                                    CIVIL ACTION NO.

VERSUS                                              19-695-SDD-EWD

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,
SENTINEL INSURANCE COMPANY, LTD.,
AND HARTFORD ACCIDENT &
INDEMNITY COMPANY

## RULING

This matter is before the Court on the Cross-Motions for Partial Summary Judgment on Choice of Law filed by Plaintiff, Charles Houghton ("Houghton")[1] and by Defendant, Sentinel Insurance Company, LTD (incorrectly named as "Hartford Accident and Indemnity Company and/or Sentinel Insurance Company, LTD," hereinafter "Sentinel").[2]  Houghton and Sentinel filed Oppositions[3] to the respective motions, and each filed a Reply.[4] For the following reasons, the Court finds that Sentinel's motion should be granted, and Houghton's motion should be denied.

## I.    FACTUAL BACKGROUND[5]

This case arises out of a collision which occurred on January 10, 2019 in Baton

---

[1] Rec. Doc. No. 71.
[2] Rec. Doc. No. 72.
[3] Rec. Doc. Nos. 73 & 74.
[4] Rec. Doc. Nos. 75 & 76.
[5] The following facts are admitted or deemed admitted unless otherwise indicated.

Rouge, Louisiana involving Houghton and another driver.[6] At the time of the accident, the 2018 GMC Sierra truck that Houghton was driving was owned by his employer, Advanced Industrial Resources, LLC ("AIR").[7]  This vehicle was insured by a policy held by Sentinel numbered UEC KL9697 ("the policy").[8]

The Sentinel policy was purchased by AIR.[9] AIR's insurance coverage with Sentinel was exclusively placed by and through the Dickerson Agency,[10] and Sentinel communicated with AIR via the Dickerson Agency.[11]  The Dickerson Agency first applied to Sentinel for insurance on behalf of AIR in 2010.[12] On the insurance application written on behalf of AIR to Sentinel, Lisa Dickerson listed that AIR was seeking automobile liability coverage;[13] and AIR was listed as being located in Marietta, Georgia.[14]  Also on the insurance application, there were six drivers listed, all of whom were licensed in Georgia, and there were eight vehicles listed, all listed as being garaged in Cartersville, Georgia.[15] Each vehicle was listed as having an "intermediate" radius, which means that the vehicle would be driven a maximum of 200 miles from its garaging location in Cartersville, Georgia.[16]

---

[6] Rec. Doc. No. 71-4, ¶ 7.
[7] *Id.* at ¶ 5.
[8] Rec. Doc. No. 74-9 – Certified Sentinel Policy (with premiums redacted) No. 20 UEC KL9697.
[9] Rec. Doc. No. 74-9 – Certified Sentinel Policy No. 20 UEC KL9697, Bates No. "SENTINEL 54".
[10] Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 101.
[11] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, p. 29, 44; Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 101; Rec. Doc. No. 74-6 – Deposition of Scott Wilson, p. 17.
[12] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, p. 17.
[13] *Id.* at p. 26; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted) and Exhibit A attached thereto.
[14] Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted) and Exhibit A attached thereto.
[15] *Id.*
[16] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, p. 24 – 25; Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin p. 97; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted) and Exhibit A attached thereto.

On December 14, 2010, Sentinel bound and later issued the original AIR auto policy based upon the information provided by AIR's agent in the insurance application.[17] Sentinel contends it complied with Georgia law in binding and issuing the policy.[18] The policy did not include forms specific to any state apart from Georgia;[19] it charged a premium based upon the risk Sentinel was insuring in Georgia;[20] it was a scheduled policy (not a fleet policy) that specifically listed each vehicle covered under the policy;[21] and it stated that it provided $100,000 in UMBI coverage.[22]

Every year from the inception of the Sentinel policy in 2010 to the policy issued in 2018, the Sentinel auto coverage was renewed.[23] Every year at renewal of the Sentinel policy, the Dickerson Agency would inform Sentinel of any changes or additions to the policy.[24] Sentinel claims that, although new drivers were periodically added to the policy, all drivers were consistently listed as licensed in Georgia.[25] It is undisputed that, while

---

[17] Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 38, 40 – 41.

[18] *Id.* at pp. 42-43, 52, 93. Houghton denies this fact based on a legal argument and his insistence that the policy itself required the return of a signed form in writing. *See* Rec. Doc. No. 73-1, ¶ 15 (quoting Rec. Doc. No. 71-6, p. 15 (Sentinel Insurance Policy No. 20 UEC KL9697).

[19] Rec. Doc. No. 74-9 - Certified Sentinel Policy No. 20 UEC KL9697.

[20] Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, pp. 42, 52, 93. Houghton denies this statement citing to the Policy Adjustment Notice which, it claims, "suggests that Sentinel charged AIR, LLC a premium based on estimates and assumptions related to 'payroll, sales revenue, and the nature of business operations for the policy period shown.'" Rec. Doc. No. 73-1, ¶ 17 (quoting Rec. Doc. No. 71-6, p. 52 (Sentinel Insurance Policy No. 20 UEC KL9697).

[21] Rec. Doc. No. 74-9 - Certified Sentinel Policy No. 20 UEC KL9697, Bates No. "Sentinel 54, 63, 78". Houghton denies this statement "for lack of information to the extent that the term "scheduled policy" is a term of art used by the insurance industry." Rec. Doc. No. 73-1, ¶ 18. Houghton does not cite record evidence to counter Sentinel's statement.

[22] Rec. Doc. No. 74-9 - Certified Sentinel Policy No. 20 UEC KL9697, Bates No. "Sentinel 64". Houghton admits this statement but adds that he denies it "to the extent that the Georgia Uninsured Motorists Coverage Selection /Rejection form is blank." Rec. Doc. No. 73-1, ¶ 19 (citing Rec. Doc. No. 71-6, p. 15-18 (Sentinel Insurance Policy No. 20 UEC KL9697).

[23] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, p. 151; Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 81. Houghton denies that the policy at issue was "automatically" renewed. Rec. Doc. No. 73-1, ¶ 20 (citing Rec. Doc. No. 71-6, pp. 15-18 (Sentinel Insurance Policy No. 20 UEC KL9697); Rec. Doc. No. 72-4, pp. 69-74.

[24] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 130 – 131

[25] *Id.* at pp. 61, 155; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted). Houghton denies this allegation for lack of information and argues that, for the 2018-2019 policy in effect on the date of this collision, Sentinel did not request an

new vehicles were periodically added to the Sentinel policy, all vehicles were always listed as garaged and registered in Cartersville, Georgia,[26] and all vehicles were always listed as having a travel radius of no more than 50 to 200 miles from their Cartersville, Georgia garage locations.[27]

AIR opened a Louisiana location in either 2017 or 2018.[28] It is undisputed that, before Houghton's accident, Sentinel was not advised by AIR that it had an office in Louisiana.[29]   Before the January 10, 2019 accident, Sentinel contends it had no knowledge that AIR had an office in Louisiana.[30]

Around March 8, 2018, AIR informed the Dickerson Agency that it had purchased the 2018 GMC Sierra which was involved in the subject accident.[31]   In response, the Dickerson Agency sent a change form to Sentinel advising that AIR wished to have the 2018 GMC Sierra added to the Sentinel policy.[32] On the change form, the Dickerson Agency informed Sentinel that the 2018 GMC Sierra was registered in Georgia.[33] However, on the change form, the Dickerson Agency also informed Sentinel that the 2018

---

updated driver's list before automatically renewing the policy.  Rather, Plaintiff claims Sentinel increased the amount of the premium based on AIR's failure to provide an updated driver's list in 2017.  Rec. Doc. No. 73-1, ¶ 24 (citing Rec. Doc. No. 72-4, pp. 89-91 (Deposition of Nikolaus Baldwin)).

[26] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 61, 155; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).

[27] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 61, 155; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).

[28] Rec. Doc. No. 74-6 – Deposition of Scott Wilson, pp. 47 – 48.

[29] Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 147 – 148; Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 42 – 43.

[30] Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 147 – 148; Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 42 – 43. Houghton denies this purported fact, directing the Court to the deposition testimony of Scott Wilson, AIR's owner, wherein he testified that he did not hide the fact that AIR was operating in locations all over the country and that this was evident from AIR's website.  Rec. Doc. No. 73-1, ¶ 29 (citing Rec. Doc. No. 71-5, p. 62, lines 6-19 (Deposition of Scott Wilson)).

[31] Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted) and Exhibit C attached thereto.

[32] *Id.*

[33] *Id.*

GMC Sierra was garaged in Cartersville, Georgia,[34] and it expected the 2018 GMC Sierra

to be insured by $100,000 in UMBI coverage.[35] The change form was signed by an agent

at the Dickerson Agency on behalf of AIR.[36] At this time, Lisa Dickerson also confirmed

to Sentinel that the 2018 GMC Sierra was expected to have an Intermediate (50 to 200

mile) travel radius from its garaging location.[37]  The Louisiana state line is over 450 miles

from Cartersville, Georgia.[38]  Prior to the January 10, 2019 accident, Sentinel was never

informed that AIR had a Louisiana office.[39]

On March 12, 2018, Houghton was hired to work for AIR in Louisiana, and on

March 19, 2018, AIR sent the 2018 GMC Sierra to Houghton for his use in Louisiana.[40]

Sentinel claims it had no knowledge that AIR employed any Louisiana employees,

including Houghton, prior to the January 10, 2019 accident.[41]  Sentinel also claims it did

not know that AIR garaged any of the vehicles listed on the Sentinel policy in Louisiana,

including the 2018 GMC Sierra, prior to the January 10, 2019 accident.[42]

---

[34] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, p. 130; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).

[35] Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).  Houghton denies this statement as irrelevant under the law but offers only legal argument not responsive to the statement.  *See* Rec. Doc. No. 73-1, ¶ 36.

[36] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, p. 130; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).  Houghton denies this statement but offers no countervailing evidence. *See* Rec. Doc. No. 73-1, ¶ 37.

[37] Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).  Houghton denies this statement "for lack of evidentiary support" because the Auto Change Request was not generated in connection with the 2018 renewal.  Rec. Doc. No. 73-1, ¶ 44 (citing R. Doc. 72-7, ¶ 11, Exhibit C attached to Declaration). Houghton does not direct the Court to evidence contradicting Sentinel's record evidence supporting the statement.

[38] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, p. 47.

[39] *Id*. at pp. 42-43, 61; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin, p. 3.

[40] Rec. Doc. No. 74-7 – Deposition of Charles Houghton, p. 41.

[41] Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, pp. 147 – 148; Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 42 – 43.  Houghton denies this allegation, arguing that AIR had knowledge because the policy states: the premium is based on "payroll, sales revenue, and the nature of business operations for the policy period shown."  Rec. Doc. No. 73-1, ¶ 39 (quoting R. Doc. 72-4, p. 89-9 (Deposition of Nikolaus Baldwin); *see also* R. Doc. 71-6, p. 52 (Sentinel Insurance Policy No. 20 UEC KL9697)).

[42] Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, pp. 147 – 148; Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 42 – 43.  Houghton denies this allegation, arguing that AIR had knowledge because

Sentinel states that, prior to the January 10, 2019 accident:  (1) it never knew that AIR had a Louisiana office; (2) it was never informed and never knew that AIR had employees that were licensed outside of Georgia; (3) it was never informed and never knew that AIR had vehicles which were being garaged outside of Georgia; (4) it was never informed and never knew that AIR employees would drive the covered vehicles more than 200 miles from Cartersville, Georgia.[43]

On the day of the January 10, 2019 accident, all drivers listed on the Sentinel policy had Georgia drivers' licenses.[44]  It is undisputed that, on the day of the accident, all vehicles on the Sentinel policy were listed as Georgia registered, and all vehicles were listed as garaged with either a local travel radius (up to 50 miles) or an intermediate travel radius (50 to 200 miles).[45]  On the date of the accident, Charles Houghton is not listed as a driver at all.[46]

The Dickerson Agency was granted the authority by AIR to choose and bind appropriate insurance coverage.[47]  Lisa Dickerson discussed the UMBI coverage with

---

the policy states: the premium is based on "payroll, sales revenue, and the nature of business operations for the policy period shown."  Rec. Doc. No. 73-1, ¶ 41 (quoting R. Doc. 72-4, p. 89-9 (Deposition of Nikolaus Baldwin); see also R. Doc. 71-6, p. 52 (Sentinel Insurance Policy No. 20 UEC KL9697)).

[43] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 61, 155; Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 147.  Houghton denies these statements, arguing that AIR had knowledge because the policy states: the premium is based on "payroll, sales revenue, and the nature of business operations for the policy period shown."  Rec. Doc. No. 73-1, ¶¶ 47-53 (quoting Rec. Doc. No. 72-4, p. 89-9 (Deposition of Nikolaus Baldwin); Rec. Doc. No. 71-6, p. 52).

[44] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 52, 62; Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 48.  Houghton denies this statement, arguing "there are no specific drivers listed in the policy."  Rec. Doc. No. 73-1, ¶ 54 (citing Rec. Doc. No. 71-6, pp. 28-9. (Sentinel Insurance Policy No. 20 UEC KL9697)(covered autos)).

[45] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 42-43, 61; Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 147; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).

[46] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 52, 62. Houghton claims that no drivers are listed in the Sentinel policy. Rec. Doc. No. 73-1, ¶ 57 (citing Rec. Doc. No. 71-6).

[47] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, p. 48.  Houghton denies this statement "for lack of evidence to support" (Rec. Doc. No. 73-1, ¶ 58); however, he offers no countervailing record evidence to rebut Sentinel's statement.

AIR and was authorized to pick the coverage AIR needed and wanted,[48] and, when the Dickerson Agency filled out the application for insurance on behalf of AIR, it requested that the Sentinel policy provide $100,000 UMBI limits.[49]

The policy stated that the UMBI limits were $100,000 per the insurance application when the Sentinel policy was bound.[50] Sentinel claims that, from the inception of the Sentinel policy until the January 10, 2019 accident, AIR did not increase the $100,000 UMBI limits provided by the Sentinel policy, and the Dickerson Agency, on behalf of AIR, did not increase the $100,000 UMBI limits provided by the Sentinel policy.[51]

Houghton offers the following statement of undisputed facts in support of his Motion for Summary Judgment.[52] Houghton lives in Denham Springs, Louisiana, with his

---

[48] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 27–29.

[49] Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 52; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted) and Exhibit A attached thereto.

[50] Rec. Doc. No. 74-9 – Certified Sentinel Policy No. 20 UEC KL9697, Bates No. SENTINEL 67; Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 7–9.

[51] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, p. 31. Houghton disputes these statements, arguing that the following policy language undermines Sentinel's position:

> **Please review the attached coverage selection form, select the type and amount of coverage you wish to purchase, sign the form and return it to us. <u>If you do not return the completed, signed form to us within 60 days of receipt of this notice, we will have to endorse your policy to provide the maximum amount of coverage available and charge you any increased premium due for that coverage.</u>**

Rec. Doc. No. 73-1, ¶¶ 61-63 (quoting Rec. Doc. No. 71-6, p. 15)(original emphasis).

[52] For nearly every offered statement, and unless otherwise noted, Sentinel qualifies the statements as follows:

> Qualified. The statements contained in Plaintiff's Statement of Undisputed Facts No. … are not material facts for the purposes of evaluating Plaintiff's Cross Motion for Partial Summary Judgment. It is undisputed that Sentinel was not advised or knew that AIR employed any workers who lived outside of Georgia, that any of the vehicles listed on the Sentinel policy were driven outside of a 200-mile radius of Cartersville, Georgia, or that any of the vehicles listed on the Sentinel policy were garaged outside of Georgia prior to the subject accident. As this case involves an insurance contract, only Sentinel's knowledge of AIR's business outside of Georgia is relevant. Additionally, a conclusory and self-serving affidavit, upon which Plaintiff's Statement of Undisputed Facts No. … is based, has been found insufficient evidence to raise a genuine issue of material fact. Therefore, Sentinel requests that the affidavit be stricken from the record.

*See generally*, Rec. Doc. No. 74-1. While the Court agrees that Houghton's affidavit contains attestations for which he has failed to establish personal knowledge, the Court need only to excise those portions and leave the remainder of the Affidavit undisturbed. *See Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992)("The court should disregard only the inadmissible portions of a challenged affidavit.").

family.[53] After commencing employment with AIR in March of 2018, Houghton has driven the 2018 GMC Sierra pick-up truck, provided by AIR, to use in connection with his job duties and for his personal use.[54] On January 10, 2019, Houghton sustained severe personal injuries as a result of the aforementioned collision, while operating the 2018 GMC Sierra in the course and scope of his employment with AIR.[55]

The 2018 GMC Sierra was brought to Louisiana by a representative of AIR and remained in Houghton's exclusive possession until the vehicle was totaled in the January 10, 2019 collision.[56] The 2018 GMC Sierra (V.I.N. #1GT42VCY8JF195791) was insured by Sentinel, and this insurance policy provided underinsured motorist ("UM") coverage to Houghton at the time of the collision.[57] Houghton claims he was an insured under the Sentinel policy.[58] Houghton contends a valid UM written selection/rejection form was not properly executed by a representative of AIR.[59]

---

[53] Rec. Doc. No. 71-4 - Affidavit of Charles Major Houghton, ¶¶ 1-3.

[54] *Id.* at ¶¶ 4-6.

[55] *Id.* at ¶ 7.  Sentinel disputes the severity and causation of Houghton's injuries but notes that this issue is irrelevant for purposes of resolving this choice of law issue.  Rec. Doc. No. 74-1, ¶ 4.

[56] Rec. Doc. No. 71-4 - Affidavit of Charles Major Houghton, ¶ 5.  Sentinel denies that the vehicle was in Houghton's possession prior to March 2018 but cites no record evidence. Rec. Doc. No. 74-1, ¶ 5.

[57] Rec. Doc. No. 71-6 - Sentinel Insurance Policy No. 20 UEC KL9697.  Sentinel qualifies this statement: "The applicable insurance policy issued by Sentinel speaks for itself and is its own best evidence of its exclusions, coverages and exceptions."  Rec. Doc. No. 74-1, ¶ 6.

[58] Rec. Doc. No. 71-6 - Sentinel Insurance Policy No. 20 UEC KL9697. Sentinel responds that "[t]he applicable insurance policy issued by Sentinel speaks for itself and is its own best evidence of its exclusions, coverages and exceptions," and "specifically denies that Charles Houghton was a specifically named insured under the Sentinel policy, that the policy was issued to Charles Houghton, and/or the Charles Houghton was listed as a driver under the subject policy." Rec. Doc. No. 74-1, ¶ 7.

[59] Rec. Doc. No. 71-6 - Sentinel Insurance Policy No. 20 UEC KL9697, Bates No. SENTINEL 66-69. *See* Doc. 15-1, p. 8. "As communicated to Plaintiff, a Louisiana UMBI rejection/selection form does not exist..." Sentinel denies this statement, arguing that it involves a question of law, not fact.  Sentinel admits "only that Louisiana UMBI rejection/selection form does not exist, as the applicable policy was properly issued pursuant to Georgia law," then explains that it complied with what Georgia law requires. Rec. Doc. No. 74-1, ¶ 8 (citations omitted).

Houghton states that AIR is an environmental engineering and consulting firm specializing in air quality testing, regulatory compliance, and permitting.[60] Houghton also contends that AIR has four employees who reside in Louisiana, two of which were provided with company vehicles.[61] Houghton's work duties primarily consist of traveling to and from industrial facilities throughout the State of Louisiana and performing air quality servicing.[62] When not traveling to and from industrial facilities, Houghton claims the vast majority of his work is performed out of his home located in Denham Springs, Louisiana or the AIR Baton Rouge Regional Office, which is located at 11942 Lakeland Blvd., Baton Rouge, Louisiana 70809.[63] The 2018 GMC Sierra was permanently garaged in Denham Springs, Louisiana.[64] Since commencing employment with AIR, Houghton estimates that 90% of his work was performed exclusively in Louisiana, with the other 10% being performed in different states throughout the country.[65]  Houghton only recalls traveling to the State of Georgia on three or four occasions during his two years of employment with Air, and two of those visits were by airplane.[66]

Houghton contends Steffan McBride, a co-worker and guest-passenger in the vehicle at the time of the collision, is a resident of Louisiana and was also provided with

---

[60] Rec. Doc. No. 71-4 - Affidavit of Charles Major Houghton, ¶ 10.  Sentinel offers its general qualification but also states that Houghton is not the best party to testify regarding AIR's business.  Rec. Doc. No. 74-1, ¶ 10.
[61] Rec. Doc. No. 71-4 - Affidavit of Charles Major Houghton, ¶ 11.  Sentinel offers its general qualification but also states that Houghton is not the best party to testify regarding AIR's business.  Rec. Doc. No. 74-1, ¶ 11 (citations omitted).
[62] Rec. Doc. No. 71-4 - Affidavit of Charles Major Houghton, ¶ 12.
[63] *Id*. at ¶ 13.
[64] *Id*. at ¶ 14.
[65] *Id*. at ¶¶ 15-16.
[66] *Id*. at ¶ 14.

a work vehicle by AIR.[67]  The adverse driver is also a resident of Louisiana.[68]  Following the collision, Houghton's wife came to the scene and transported Houghton to Our Lady of the Lake Regional Medical Center for emergency medical treatment;[69] all of Houghton's medical providers are located in the State of Louisiana.[70]

Houghton notes that AIR is a member of the Louisiana Chemical Industry Alliance.[71] Sentinel's insurance policy provides coverage for territories outside the State of Georgia.[72] Houghton claims that the Sentinel policy anticipates that business will be performed outside of Georgia and covered vehicles will be operated in states other than Georgia.[73] The Sentinel insurance policy does not contain a choice-of-law provision.[74] Sentinel is authorized to do business in the State of Louisiana.[75]  Houghton claims the UM selection form attached to the insurance policy is incomplete and not properly executed.[76]

---

[67] *Id*. at ¶ 18. Sentinel offers its general qualification but also states that Houghton is not the best party to testify concerning Steffan McBride's residence and alleged work vehicle privileges. Rec. Doc. No. 74-1, ¶ 16.

[68] *Id*. at ¶ 19. Sentinel offers its general qualification but also states that Houghton does not have the knowledge necessary to testify concerning the adverse driver's domicile. Rec. Doc. No. 74-1, ¶ 17.

[69] *Id*. at ¶ 20.

[70] *Id*. at ¶ 21.

[71] *Id*. at ¶ 22. Sentinel offers its general qualification but also states that Houghton is not the best party to testify regarding AIR's business.  Rec. Doc. No. 74-1, ¶ 22.

[72] Rec. Doc. No. 71-6 - Sentinel Insurance Policy No. 20 UEC KL9697, Bates No. SENTINEL 87. Sentinel qualifies this statement: "Any applicable policy issued by Sentinel speaks for itself and is the best evidence of its contents, coverages and exclusions."  Rec. Doc. No. 74-1, ¶ 21.

[73] Rec. Doc. No. 71-6 - Sentinel Insurance Policy No. 20 UEC KL9697, Bates No. SENTINEL 80. Sentinel specifically denies this statement: "The applicable policy issued by Sentinel did not anticipate that covered vehicles would be principally or regularly operated over a 50 to 200 mile radius of Cartersville, Georgia. All vehicles on the applicable Sentinel policy were listed as being garaged and registered in the state of Georgia.  The applicable Sentinel policy also only contains endorsements for the State of Georgia. Furthermore, the applicable policy issued by Sentinel speaks for itself and is the best evidence of its contents, coverages and exclusions."  Rec. Doc. No. 74-1, ¶ 22 (citations omitted).

[74] Rec. Doc. No. 71-6 - Sentinel Insurance Policy No. 20 UEC KL9697.  Sentinel qualifies this statement: "Any applicable policy issued by Sentinel speaks for itself and is the best evidence of its contents, coverages and exclusions."  Rec. Doc. No. 74-1, ¶ 23.

[75] Rec. Doc. No. 8, ¶ 1.

[76] Rec. Doc. No. 71-6 - Sentinel Insurance Policy No. 20 UEC KL9697, Bates No. SENTINEL 66-69. Sentinel admits "only that Louisiana UMBI rejection/selection form does not exist, as the applicable policy

AIR owner Scott Wilson ("Wilson") testified that the company has done more business outside of the State of Georgia than they have inside the State of Georgia since the company's inception in 1998.[77] According to Wilson, the Louisiana office location was placed on their website sometime after 2017.[78] AIR has advertised on the company's website that it performed work all across the United States.[79]

Houghton initially filed this personal injury lawsuit in state court; Sentinel removed the matter to this Court.[80]  Houghton previously settled his claims against the adverse driver and his insurer.[81] Houghton and Sentinel both seek partial summary judgment regarding whether Georgia law or Louisiana law applies to Sentinel's policy. If Georgia law applies, then the $100,000 UMBI limit in the Sentinel policy must apply as written. Conversely, application of Louisiana law to the Sentinel policy dictates that, in the absence of a signed UM coverage selection/rejection form, the policy affords $1,000,000 in coverage according to its liability limits.

---

was properly issued pursuant to Georgia law," then explains that it complied with what Georgia law requires. Rec. Doc. No. 74-1, ¶ 25 (citations omitted).

[77] Rec. Doc. No. 71-5 - Excerpt from Deposition of Scott Wilson, 9:13-19.

[78] *Id.* at 49:12-25.  Sentinel qualifies this statement:  The website print outs upon which Plaintiff's Statement of Undisputed Fact No. 27 is based are not dated. Further, Scott Wilson, the owner of AIR testified that the AIR website was likely updated after Charles Houghton's accident, therefore, the website print outs are irrelevant and not properly authenticated and should be stricken from the record of this matter. It is only admitted that, according to Scott Wilson, the Louisiana office location was placed on the AIR website after the subject accident." Rec. Doc. No. 74-1, ¶ 27 (citations omitted).

[79] Rec. Doc. No. 71-5 - Excerpt from Deposition of Scott Wilson, 62:11-19.  Sentinel denies this statement: "The website print outs upon which Plaintiff's Statement of Undisputed Fact No. 27 is based are not dated. Further, Scott Wilson, the owner of AIR testified that the AIR website was likely updated after Charles Houghton's accident, therefore, the website print outs are irrelevant and not properly authenticated and should be stricken from the record of this matter. It is only admitted that, according to Scott Wilson, the Louisiana office location was placed on the AIR website after the subject accident." Rec. Doc. No. 74-1, ¶ 28 (citations omitted).

[80] Rec. Doc. No. 1.

[81] Rec. Doc. 72-1, p. 1.

## II.    LAW & ANALYSIS

### A.  Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Rule 56(a) also permits partial summary judgment on any part of a claim or defense. A fact is material when proof of its existence or nonexistence might affect the outcome of a suit under the applicable governing law.[82] There is a genuine issue of material fact if a reasonable jury could reach a verdict for the nonmoving party.[83] If the movant meets the initial burden, the burden is shifted to the nonmoving party to establish a genuine issue of material fact for trial.[84] When evaluating the parties' evidence, all facts and inferences are construed in the light most favorable to the nonmoving party.[85]

### B.  Choice of Law Analysis

In *Champagne v. Ward*, the Louisiana Supreme Court established a framework for analyzing choice of law determinations in UM cases involving out-of-state insureds with foreign insurance policies involved in accidents in Louisiana.[86] The court recognized that Louisiana's UM law **can** be applied to foreign insurance policies when the accident occurs in Louisiana and involves a Louisiana resident but rejected the notion that Louisiana's UM law must be applied in such cases.[87] Ultimately, *Champagne* clarifies that automatic application of Louisiana's UM law is inappropriate and that the starting place for

---

[82] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[83] *Id.*
[84] *Templet v. HydroChem, Inc.*, 367 F. 3d 473, 477 (5th Cir. 2004).
[85] *Anderson*, 477 U.S. at 255.
[86] *Champagne v. Ward*, 2003-3211 (La. 1/19/05), 893 So. 2d 773.
[87] *Id*. at 786 (emphasis added).

determining the applicable state law is the choice of law analysis under Louisiana's choice of law rules.

Under *Champagne*, the first step is to determine whether a conflict exists between the UM laws of the interested states, here, Georgia and Louisiana.[88] The next step requires a determination of which state's policies would be most seriously impaired if its law were not applied based on Louisiana's choice of law provisions, La. C.C. arts. 3515 and 3537.[89] Once the governing state's law has been determined, the Court can decide how much UM coverage is available.

1.    Louisiana UM Law v. Georgia UM Law

Pursuant to *Champagne*, the threshold issue to resolve is whether a conflict exists between Georgia's and Louisiana's UM law.[90] Louisiana Revised Statute 22:1295 requires that all automobile liability policies delivered or issued for delivery in Louisiana include UM coverage up to the policy liability limits unless the insured expressly rejects such coverage or chooses a lower limit via execution of a specific UM selection/rejection form provided by the Louisiana Insurance Commissioner.[91] In contrast, Georgia law does not require any specific UM selection/rejection form to effectively reject UM coverage and/or to select limits of UM coverage less than the policy liability limits.[92] Under Georgia law, the insured need only "affirmatively choose" UM limits in an amount less than the liability limits.[93]  Where Louisiana requires a specific form for a valid selection/rejection of

---

[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] *Duncan v. U.S.A.A. Ins. Co.*, 2006-363 (La. 11/29/06), 950 So. 2d 544, 551.
[92] O.C.G.A. 33-7-11.
[93] O.C.G.A. 33-7-11(a)(1)(B).

UM coverage, an "affirmative choice" in Georgia is not even required to be in writing.[94] Georgia jurisprudence clarifies that an "affirmative choice" could simply be a signed insurance application, or an insurance submittal document signed by the insurance agent.[95] Given the substantial differences between each state's UM law, the Court must conduct a conflict analysis to determine which state's policies would be most seriously impaired if its laws were not applied to the insurance contract.[96]

2.    Balance of State Contacts and Competing Policies

The Court must perform the choice of law analysis under La. C.C. arts. 3515 and 3537.[97] Both Articles initially state the primary objective of identifying the state whose policies would be most seriously impaired if its law were not applied. Generally, that state is determined by evaluating the strength and pertinence of the relevant policies of all involved states considering: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.[98]

With specific respect to issues of conventional obligations, here, an insurance contract, La. C.C. art. 3537 also calls upon the Court to evaluate the strength and pertinence of the relevant policies of the involved states in light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation,

---

[94] *State Auto Prop. & Cas. Ins. Co. v. Jacobs*, No. 1:17-CV-04328-WMr, 2019 WL 3503486, *3 (N.D. Ga. Feb. 26, 2019).
[95] *Ace Am. Ins. Co. v. Townsend*, No. CV 409-101, 2011 WL 3348378 at *3 (S.D. Ga. March 11, 2011)(citing *American Liberty Ins. Co. v. Sanders*, 120 Ga. App. 1, 2, 169 S.E. 2d 342, 344, (1969)).
[96] *Champagne*, 893 So. 2d at 786.
[97] *Id.*
[98] La. C.C. art. 3515.

formation, and performance of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[99]

Public policy in Louisiana strongly favors the protection of Louisiana residents and others when an accident happens on roads in the state.[100] The purpose of Louisiana's UM law is to promote full recovery for innocent car accident victims by mandating minimum liability insurance coverage and making coverage available when the tortfeasor is uninsured or underinsured.[101] Factors supporting this public policy interest are: (1) economic interests, including costs of medical care; (2) significant involvement of the Department of Public Safety and Corrections and the judicial system; and (3) the issuing states often have credit and reduction provisions for UM coverage, thereby reducing limits and preventing full recovery of innocent accident victims.[102]

The facts of this case reveal several contacts with the State of Louisiana. The accident in this case occurred in Louisiana, and Houghton, a Louisiana resident, subsequently received all medical treatment for his injuries resulting from the accident in Louisiana.[103] Additionally, despite the notation on the policy that indicated the 2018 GMC Sierra was garaged in Georgia, the vehicle actually remained garaged at Houghton's home in Louisiana when it was not in use.[104] Houghton primarily drove the vehicle in

---

[99] La. C.C. art. 3537.
[100] *Champagne*, 893 So. 2d at 777.
[101] *Id.* (*Martin v. Champion Ins. Co.*, 95-0030 (La. 6/30/95), 656 So. 2d 991, 994).
[102] *Zuviceh v. Nationwide Ins. Co.*, 2000-0773 (La. App. 1 Cir. 5/11/01), 786 So.2d 340, 345, *writ denied*, 2001-2141 (La. 11/9/01), 801 So.2d 373).
[103] Rec. Doc. 71-4, ¶¶ 20-21.
[104] *Id.* at ¶ 14.

Louisiana to perform his duties as an air-quality servicer and used the vehicle in his personal capacity as permitted by his employer, AIR.[105]

On the other hand, Georgia has a strong interest in regulating its insurance industry and in the contractual obligations incidental to that industry.[106] The Louisiana Supreme Court recognizes that the integrity of a contract is a real and substantial interest, and the fact that Congress has given fifty states the power to have their own uniform system of insurance regulation strongly supports that this is a legitimate public purpose.[107] Sentinel argues that Georgia law is applicable to this contract because the scheduled auto policy was written and delivered in Georgia to a Georgia company.[108] Sentinel also points out that the policy listed only Georgia-licensed drivers, Georgia-licensed vehicles, and Georgia garage locations.[109] A Georgia insurance agent negotiated and placed the policy and subsequently renewed the policy annually up to the time of the incident in January 2019.[110]

Houghton urges the Court to follow the reasoning set forth in *Dunlap v. Hartford Ins. Co.* to conclude that Louisiana law applies.[111]  In *Dunlap*, the plaintiff was a Louisiana resident who was injured in an automobile accident that occurred in Louisiana.[112]  The plaintiff sought coverage under the UM policy issued to his employer who owned the vehicle.[113] The UM policy was negotiated and delivered in Michigan.[114] The employer was

---

[105] *Id.* at ¶ 12.
[106] *Dunlap v. Hartford Ins. Co. of the Midwest*, 04-0725 (La. App. 1 Cir. 3/24/05), 907 So. 2d 122, 126.
[107] *Champagne*, 893 So. 2d at 788.
[108] Rec. Doc. 72-1, p. 17.
[109] *Id.*
[110] *Id.* at pp. 17-18.
[111] Rec. Doc. 71-1, pp. 11-12.
[112] *Dunlap*, 907 So. 2d at 123.
[113] *Id.*
[114] *Id.*

based in Michigan but conducted business across the United States.[115]  In reaching its determination that Louisiana law applied to the policy, the court noted that the policy provided commercial coverage for a fleet of vehicles used nationwide.[116] The nature of the fleet policy reflected the expectation of the parties that another state's law could apply.[117]  The court also noted that the Michigan employer-owner had a significant commercial presence in Louisiana and availed itself of the benefits of Louisiana laws by maintaining offices and conducting business in the state.[118]

Sentinel relies on several cases in support of its position,[119] including *Garces-Rodriguez v. Geico Indemnity Company*, a case decided by the Louisiana Fifth Circuit Court of Appeal.[120]  In *Garces-Rodriguez*, the plaintiffs were involved in a motor vehicle collision that occurred in Jefferson Parish, Louisiana.[121]  The plaintiffs filed suit in Louisiana state court and named Progressive County Mutual Insurance Company ("Progressive") as a defendant as both the plaintiffs and the defendant-driver were insured by Progressive.[122]  The plaintiffs claimed Progressive provided UM coverage for their damages and that Louisiana law applied to their claims.[123]  Progressive moved for summary judgment, arguing that UM coverage had been rejected by the plaintiffs and that Texas law applied to the matter as the policies were issued in Texas, and UM

---

[115] *Id.* at 125.
[116] *Id.* at 125-26.
[117] *Id.*
[118] *Id.* at 127.
[119] The Court has considered but will not discuss every case cited by the Parties; the Court will focus on those cases relevant to the Court's ruling.
[120] 16-196 (La. App. 5 Cir. 12/21/16), 209 So.3d 389.
[121] *Id.* at 390.
[122] *Id.*
[123] *Id.*

coverage was rejected in accordance with Texas law.[124]   Ultimately, the district court granted summary judgment in favor of Progressive, and the plaintiffs appealed.[125]

The plaintiffs argued on appeal that the only interest Texas had was that the insurance policies in question were issued in Texas. The plaintiffs offered the following alleged Louisiana interests in the case: "1) the accident occurred in Louisiana; 2) the collision occurred between Louisiana residents; 3) plaintiffs received all of their medical treatment in Louisiana; and 4) the two vehicles involved in the accident were registered and garaged in Louisiana."[126]   Progressive argued that Texas law applied and claimed that Texas had "a greater interest than Louisiana in enforcing its policies because: 1) the vehicles insured under the policies were both garaged in Texas; 2) the policies were issued in Texas; and 3) the insureds resided in Florida, not Louisiana."[127]

In reviewing the district court's grant of summary judgment, the appellate court followed the principles set forth in *Champagne* and considered the factors as required by La. C.C. art. 3515 and La. C.C. art. 3537. In affirming the district court's grant of summary judgment, the appellate court noted:

> The record before us reflects that the Progressive insurance policies issued to Mr. Garces–Rodriguez and Mr. Paez were Texas commercial automobile policies, and the insurance agent for each policy lists a Texas address. Mr. Garces–Rodriguez and Mr. Paez provided Florida addresses when obtaining their policies. **While plaintiffs contend that the vehicles under each policy were garaged in Louisiana, the policies reflect that they were to be garaged in Texas**. **There is no showing in the record that Progressive was ever notified of any change in the location where either vehicle was to be garaged.**[128]

---

[124] *Id.*
[125] *Id.* at 390-91.
[126] *Id.* at 391.
[127] *Id.*
[128] *Id.* at 393 (emphasis added).

The court acknowledged that the accident occurred in Louisiana and that the plaintiffs had submitted evidence that all their medical treatment was obtained in Louisiana. The court noted, however, some confusion regarding the plaintiffs' residences:

> Mr. Garces–Rodriguez testified that he lived in St. Rose, Louisiana, prior to Hurricane Katrina, but he relocated to Florida after the storm. He testified that he has lived in Florida since 2005, though he came back to Louisiana in 2008 to work. When he came back to Louisiana to work, his family stayed in Florida. Mr. Garces–Rodriguez testified that Mr. Alonso is also from Florida, and he stayed with him in Louisiana when they came for work. He testified that he did not inform his insurer that he moved from Florida to Louisiana to work, because he never moved. He stated that he was living in Louisiana to work but his family and "everything I had" was in Florida. He also stated that his driver's license was issued in Florida and that he still lives in Florida.[129]

The court discussed several cases on this issue – many of which are cited by the Parties in the present matter – and held:

> In the present case, applying the facts before us to the factors for determining choice of law set forth in La. C.C. arts. 3515 and 3537, we find that Texas has a more substantial interest in having its laws applied in this case than Louisiana. While Louisiana has a strong interest in promoting full recovery for innocent automobile accident victims, Texas has a real and substantial interest in regulating its insurance industry and insurance contracts. We note that one of the plaintiffs, Mr. Garcez–Rodriguez, obtained his insurance policy in Texas, through a Texas insurance agency, and listed a Texas zip code as the location where the vehicle would be garaged. The record does not show that either Mr. Garces–Rodriguez or Mr. Alonso was a permanent resident of Louisiana; rather, Mr. Garces–Rodriguez testified that they were both from Florida but were in Louisiana to work. Considering these and the other factors discussed, along with the applicable law, we find that Texas' policies would be more seriously impaired if its laws were not applied to determine if the rejections of UM coverage are enforceable in this case. Accordingly, we conclude that Texas law applies in this matter.[130]

Sentinel also relies on the decision in *Collins v. Downes*, a case decided by the Louisiana Fourth Circuit appellate court, wherein the court determined whether Louisiana

---

[129] *Id.* at 394.
[130] *Id.* at 395.

law or Ohio law applied to the interpretation of an insurance policy.[131] In *Collins*, the accident occurred in Louisiana, the plaintiff and the tortfeasor were from Louisiana, and the tortfeasor's vehicle was garaged in Louisiana. However, the State Farm insurance policy providing UM coverage was issued in Ohio.   The plaintiff had transferred her residence and domicile from Ohio to Louisiana prior to the subject accident and was, thus, a Louisiana resident when the accident occurred.[132]

The plaintiff and insurer filed cross-motions for summary judgment regarding which state's law should apply, and the trial court ruled in favor of State Farm.   The court concluded that, "**without evidence that State Farm was given proper notice** and had knowledge that Ms. Pleasant was living in Louisiana, and that her vehicle was primarily garaged in Louisiana rather than in Ohio when it renewed the policies in June 2009, the policies are to be deemed Ohio policies and Ohio law applies."[133]

In reviewing this judgment, the *Collins* appellate court acknowledged the Louisiana interests present in the case.   However, the court concluded that Ohio had a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana based on the following:

> Mr. Collins did not submit any countervailing evidence in opposition to State Farm's motion to refute State Farm's position that the policies issued to Ms. Pleasant were Ohio policies, negotiated and issued in the state of Ohio. While Mr. Collins did submit an affidavit of Ms. Pleasant attesting that she has resided in Louisiana since February 2009, **the affidavit does not refute that she maintained her Xenia, Ohio address with State Farm or that she ever gave State Farm notice that she had moved to Louisiana and that her car was primarily garaged in Louisiana as is required by her policy.** Moreover, in brief, Mr. Collins concedes that, at the time of the

---

[131] 11–1124 (La.App. 4 Cir. 1/25/12), 83 So.3d 1177.
[132] *Id.* at 1178.
[133] *Id.* at 1178-79 (emphasis added).

accident, Ms. Pleasant's vehicle continued to be registered, titled, and licensed in Ohio.[134]

Notably, in finding that Ohio had a more substantial interest in the application of its law, the court highlighted that, "it is more likely than not that the premiums charged for both the automobile liability policy and PLU policies were based on the application of Ohio law to the contracts."[135]

Considering the foregoing jurisprudence, the Court finds that *Dunlap* is factually distinguishable from this case.[136] Here, the automobile policy between Sentinel and AIR is a scheduled policy, not a fleet policy,[137] which the *Dunlap* court found reflected the expectation of another state's law applying.   Additionally, it is uncontroverted that Sentinel never understood that the 2018 GMC Sierra truck—or any of the listed vehicles— would be driven and garaged in Louisiana.[138] As a party to the policy, Sentinel expected that the vehicle was registered and garaged in Georgia for use in Georgia by Georgia-licensed drivers.[139] Unlike the insurer in *Dunlap*, Sentinel had no expectation that another state's law would apply to the policy given the nature of the scheduled policy and its terms. Neither of the vehicles that AIR provided to two of its Louisiana employees were listed on the scheduled policy as having any relationship to Louisiana at the time of the accident.[140]

---

[134] *Id.* at 1181-82 (emphasis added).
[135] *Id.* at 1183.
[136] Houghton also urges the Court to apply the reasoning analysis set forth by a Louisiana state appellate court in *Michot v. ESP Transportation, LLC, et al.*, 16-C-512 (La. App. 5th Cir. 11/7/16)(*writ denied*)(attached as Rec. Doc. No. 74-10).  However, *Michot* is likewise distinguished from the present case as it involved a fleet policy and included Louisiana endorsements.
[137] Rec. Doc. 72-1, p. 17.
[138] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 61, 155; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).
[139] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 61, 155; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).
[140] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 61, 155; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).

As to *Garces-Rodriguez*, the Court recognizes that, in the present matter, Houghton has always been a resident of Louisiana and, thus, has more substantial contacts with Louisiana than did the plaintiffs in *Garces-Rodriguez*; however, the Court finds persuasive the reasoning and analysis of the *Garces-Rodriguez* court regarding Progressive's expectations based on the information given to the obtain the insurance policies in Texas, particularly since, as far as Progressive knew, there were no Louisiana connections to the policy, and it was never informed of the changes about where the vehicle would be garaged.

The Court also finds the decision in *Collins* persuasive.  While Houghton attempts to distinguish *Collins*, noting that the plaintiff in *Collins* moved to Louisiana from Ohio, and Houghton has always lived in Louisiana, Houghton ignores the principle in *Collins* – that the insured had an obligation to advise the insurer of the move.  Here, AIR had the obligation to notify Sentinel of any changes affecting its policy.  Again, it is undisputed that Houghton was never listed as a driver on any renewal application form submitted by AIR, and Sentinel had no knowledge at the time of the accident that his truck was not registered in GA, not garaged in GA, and not being driven by a GA licensed driver.

What is clear from the cases addressed above is that, while contacts to the forum were certainly a factor, where the insured was not given notice of important changes that affected coverage, courts generally sided with the insurer.  Here, Houghton balks at Sentinel's lack of notice claim, arguing that the policy itself contemplates coverage throughout the United States and its territories and, more specifically, a portion of the policy anticipates that business will be conducted in states outside of Georgia.[141]  Indeed,

---

[141] Rec. Doc. No. 71-1, p. 19 (citing Sentinel Policy BATES Nos. 80, 87).

the policy contains a section entitled "Out-of-state Coverage Extensions" and sets forth under what circumstances coverage will continue when a covered vehicle is "away from the state."[142]    However, nothing in this provision suggests that it applies to a vehicle being garaged and driven in a different state, permanently, and Houghton cites no authority to support this strained interpretation.

Next, Houghton contends Sentinel cannot complain about a lack of notice because it is authorized to do business in the State of Louisiana, it failed to incorporate a Louisiana endorsement or require a Louisiana selection/rejection form, and it failed to provide what state's laws should be applied to interpret its provisions.[143]   But, as discussed above, Sentinel had no reason to believe, based on information provided by AIR, that it would need to extend coverage to Louisiana.

Having offered no summary judgment evidence to refute the evidence that Sentinel was never provided notice that Houghton was living, driving, and garaging the Sierra in Louisiana, Houghton argues that Sentinel's ignorance of AIR's business operations in Louisiana is "a red herring" and should not preclude the application of Louisiana law to the policy.[144] Citing *Swain v. Life Insurance Company of Louisiana*, Houghton seizes upon the principle that: "'Notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered.'"[145] However, *Swain* offers Houghton little support.

---

[142] Rec. Doc. No. 71-6, p. 29 (citing Sentinel Policy BATES Nos. 80).
[143] Rec. Doc. No. 71-1, p. 19.
[144] Rec. Doc. No. 71-1, p. 23.
[145] *Id*. (quoting *Swain v. Life Ins. Co. of Louisiana*, 537 So. 2d 1297, 1304 (La. App. 2d Cir. 1989), *writ denied*, 541 So. 2d 895 (1989)).

In *Swain*, Swain purchased life insurance and represented on the policy that he was in "sound health."[146]   However, five years earlier, Swain underwent triple by-pass surgery; three years earlier, he was diagnosed as having Laennec's cirrhosis; and three weeks before signing the policy, he had hip surgery.[147]  Although Swain was on crutches when he signed the policy, the agent never questioned Swain about his health.[148] The acceptance of premiums when the agent had reason to suspect that Swain may not have been in sound health, yet did not initiate further inquiry, led the district court to hold that the insurance company waived any power or privilege it might have to avoid coverage based on Swain's representation.[149]

Houghton likens the facts of this case to *Swain*, arguing that Sentinel renewed AIR's policy even though it had not returned an updated vehicle/driver list,[150] and suggesting this was unreasonable because Sentinel should have "googled" AIR and observed from its website that AIR was doing business in Louisiana.[151]  Houghton offers no authority or jurisprudence that places such a burden on an insurer under similar circumstances, and *Swain* is not factually analogous to this case.

Finally, Houghton argues Sentinel cannot claim ignorance of AIR's presence in Louisiana because it is apparent from AIR's website.[152]   Indeed, AIR's owner, Scott Wilson, testified that AIR's website reveals that the company conducts business in

---

[146] *Swain*, 537 So.2d at 1298.
[147] *Id.* at 1299.
[148] *Id.*
[149] *Id.* at 1300.
[150] Rec. Doc. No. 73-1, ¶ 24.
[151] Rec. Doc. No. 71-1, pp. 23-24.
[152] Sentinel moves to strike screenshots of the website, arguing it is unknown when the screenshots were taken, and Wilson testified that the website was probably updated after the accident at issue.  Rec. Doc. No. 74, pp.6-7 (citing Rec. Doc. No. 74-6 – Deposition of Scott Wilson, p. 49).  The Court denies this motion without prejudice as the Court holds Sentinel had no obligation to investigate AIR's possible Louisiana connections based on the information provided to it by AIR via Lisa Dickerson (citing Exhibit 3).

Louisiana.[153]  However, Wilson also testified that the website was probably updated after the accident at issue.[154]

More instructive on the issue of notice is the decision in *Fuselier v. Progressive Cnty. Mut. Ins. Co*., wherein the Western District of Louisiana found that it could not justify applying Texas law to an automobile insurance policy simply because the policy was issued in Texas when the vehicle was titled, registered, and garaged in Louisiana.[155] However, the insured in *Fuselier* **gave his insurer notice that he was changing his address to a Louisiana address**, which was reflected in his Policy Renewal Notice.[156] In holding that Louisiana law governed the insurance contract, the court noted that the insurer recognized that the vehicle's garage location changed from Texas to Louisiana, and the vehicle was being used in Louisiana as reflected in the renewal notice.[157]

The jurisprudence on this issue makes clear, in these types of circumstances, that the lack of notice to the insured is material to a court's determination as to what state's law applies. Here, the summary judgment evidence demonstrates that Sentinel was not provided with any notice of the vehicle's location change prior to the accident like that of the insurer in *Fuselier*.  The record is consistent in showing that Sentinel was unaware that any of the vehicles issued under the policy would be driven in Louisiana or that any AIR employees were licensed outside of Georgia.[158] Rather, the uncontroverted record evidence establishes that Sentinel understood that it was insuring a Georgia company

---

[153] *Id*. *See* Exhibit #3 – Excerpt from Deposition of Scott Wilson, 62:6-19.
[154] Rec. Doc. No. 74-6 – Deposition of Scott Wilson, p. 49.
[155] *Fuselier v. Progressive Cnty. Mut. Ins. Co*., No. 2:20-cv-01250 2021 WL 5575648 at *3 (W.D. La. Nov. 29, 2021).
[156] *Id*. (emphasis added).
[157] *Id*.
[158] Rec. Doc. 72-1, p. 19.

with Georgia registered and garaged vehicles driven by Georgia employees.[159] At the time of the accident on January 10, 2019, Houghton was not even listed as a driver on the policy.[160] The record evidence demonstrates that all drivers on the policy had Georgia licenses, and all vehicles were listed as garaged in Georgia with a travel radius of up to 200 miles.[161]  Although Houghton contends there were no drivers listed in the actual policy, Houghton does not dispute that he was never named as a driver in the Application for Insurance that AIR presented to Sentinel (which included the names of all drivers for which AIR sought coverage under the policy), and when the 2018 GMC Sierra truck was added to the policy, AIR represented on the March 18, 2018 Auto Policy Change Request that it was garaged and registered in the state of Georgia.[162]  Further, it is clear that the premium Sentinel charged AIR was based on the belief that the vehicles would be used and garaged within a 200-mile radius of Cartersville, Georgia.[163] Based on the information provided by AIR, Sentinel simply had no reason to perform an investigation into whether Louisiana had some connection to this policy.

Considering the undisputed facts of this case, the Court finds that applying Louisiana law to the Georgia policy would result in the serious impairment of Georgia's interest in regulating its insurance industry and incidental contractual obligations. Louisiana's relationship to the policy is not sufficiently substantial to outweigh Georgia's

---

[159] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 24-25, 61; Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 97; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted), Bates stamped "Sentinel 60-63."
[160] Rec. Doc. No. 74-8, pp. 5-26.
[161] *Id*.
[162] *Id*.
[163] *Id*.  This is confirmed by the fact that, following Houghton's accident, Sentinel reviewed the coverages and quoted a new premium based on a risk assessment reflecting Louisiana rates; this would have increased AIR's yearly premium by $18,000 – a significant increase from Georgia rates.  As a result, AIR switched insurance companies.  Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 119-122, 150; Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 147.

well-recognized interest in regulating its insurance industry. Moreover, AIR's failure to notify Sentinel that the vehicle would be driven and garaged in Louisiana is material to this determination, especially since AIR had the opportunity to update the location information and failed to do so.[164]

Houghton argues: "The undisputed facts of this case support the notion that Charles Houghton had nothing to do with any misunderstanding between Sentinel, AIR, and the Dickerson Agency (insurance broker). As such, Charles Houghton certainly should not have to pay the consequence."[165] While the Court may agree with Houghton's notion that it is a reasonable expectation that he be protected under Louisiana laws, Houghton is nevertheless bound by representations and choices made by AIR, not Sentinel.  And, under the facts of this case, Houghton's expectation does not outweigh Georgia's interest in regulating its insurance industry and Sentinel's expectation that only Georgia law would govern its insurance policy issued to a Georgia company. Finally, Louisiana's policy of ensuring full recovery for innocent accident victims is not seriously impaired by the application of Georgia law when Houghton has successfully recovered from the tortfeasor's insurer, Houghton's personal insurer, and may still recover from Sentinel.[166]

### 3.   Determination of coverage under applicable law

Having determined that Georgia law applies to the policy at issue in this case, the Court finds that, under Georgia law, AIR affirmatively chose UMBI coverage in the amount of $100,000 (on more than one occasion) when: (1) its insurance agent, Lisa Dickerson,

---

[164] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 51-53, 158-160; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).
[165] Rec. Doc. No. 71-1, p. 24.
[166] Rec. Doc. 73, p. 5.

applied for the original Sentinel policy for AIR in 2010;[167] (2) Dickerson selected $100,000 in UM limits at each renewal of the policy until the time of the accident;[168] (3) Dickerson selected $100,000 in UM limits for the 2018 GMC Sierra truck when she submitted and signed the change form adding the truck to the policy.[169]

As set forth above, Georgia law does not require any specific UM selection/rejection form to effectively reject UM coverage and/or to select limits of UM coverage less than the policy liability limits.[170] Under Georgia law, the insured need only "affirmatively choose" UM limits in an amount less than the liability limits.[171] Where Louisiana requires a specific form for a valid selection/rejection of UM coverage, an "affirmative choice" in Georgia is not even required to be in writing.[172] Georgia jurisprudence clarifies that an "affirmative choice" could simply be a signed insurance application, or an insurance submittal document signed by the insurance agent.[173]

Accordingly, the coverage under the policy at issue limits Houghton's recovery to $100,000.

---

[167] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 15-16; Rec. Doc. No. 74-5 – Deposition of Nikolaus Baldwin, p. 52; Rec. Doc. No. 74-6 – Deposition of Scott Wilson, pp. 19-20; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).

[168] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, p. 31.

[169] Rec. Doc. No. 74-4 – Deposition of Lisa Dickerson, pp. 47-48; Rec. Doc. No. 74-8 - Declaration of Nikolaus Baldwin and attachments (with premiums, license numbers, and birthdates redacted).

[170] O.C.G.A. 33-7-11.

[171] O.C.G.A. 33-7-11(a)(1)(B).

[172] *State Auto Prop. & Cas. Ins. Co. v. Jacobs*, No. 1:17-CV-04328-WMr, 2019 WL 3503486, *3 (N.D. Ga. Feb. 26, 2019).

[173] *Ace Am. Ins. Co. v. Townsend*, No. CV 409-101, 2011 WL 3348378 at *3 (S.D. Ga. March 11, 2011)(citing *American Liberty Ins. Co. v. Sanders*, 120 Ga. App. 1, 2, 169 S.E. 2d 342, 344, (1969)).

III.    **CONCLUSION**

For the reasons set forth above, the Motion for Partial Summary Judgment on Choice of Law filed by Houghton[174] is DENIED. The Motion for Partial Summary Judgment on Choice of Law filed by Sentinel[175] is GRANTED.   Georgia law will apply to the insurance policy in this matter.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 12th day of July, 2022.

_Shelly D. Dick_
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[174] Rec. Doc. No. 71.
[175] Rec. Doc. No. 72.